```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MAGDA SILVA, et al.,                                       :    OPINION & ORDER
                                                           :
                        Plaintiffs,                        :
                                                           :    23-CV-9849 (JGLC) (OTW)
             -against-                                     :
                                                           :
MPOWER ENERGY, LLC, et al.,                                :
                                                           :
                        Defendants.                        :
-----------------------------------------------------------x
AYAN RHYMES and LOVELEEN KAUR,                             :
                                                           :
                        Plaintiffs,                        :
                                                           :    24-CV-2015 (JGLC) (OTW)
             -against-                                     :
                                                           :
MPOWER ENERGY NJ, LLC, et al.,                             :
                                                           :
                        Defendants.                        :
-----------------------------------------------------------x
```

**ONA T. WANG**, **United States Magistrate Judge**:

I.   **INTRODUCTION**

The above-captioned actions have been brought by two sets of plaintiffs against subsidiaries of Mpower Energy, a New Jersey power supplier. In both cases, styled as class action suits, the plaintiffs, who hail from New Jersey, New York, and Washington, D.C., allege, *inter alia*, that the defendants engaged in deceptive and bad faith pricing practices that artificially inflated tens of thousands of customers' gas and electricity bills in violation of their contracts. (*See* ECF 1, Silva ECF 1).[1] Across the two suits, the plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment,

---

[1] All citations to ECF Nos. relate to the record in *Rhymes v. MPower Energy NJ LLC*, 24-cv-2015, except where otherwise noted.

and state law claims for breach of New York General Business Laws and various states' consumer protection laws. (*See* ECF 1, Silva ECF 1). Defendants in both actions now request, by way of an omnibus motion filed in both actions, that the Court (1) compel the parties to arbitrate their claims individually and (2) either stay or dismiss these actions pending the conclusion of those individual arbitrations.[2]

For the following reasons, Defendants' motion to compel arbitration is **GRANTED** as to all Plaintiffs in both actions. Both cases are **STAYED** pending resolution of the individual arbitrations of Plaintiffs' claims.

## II.  BACKGROUND

### A.  Procedural History

Plaintiffs Ayan Rhymes ("Rhymes") and Loveleen Kaur ("Kaur"), who reside in New Jersey, filed their complaint against Defendant Mpower Energy NJ, LLC on April 6, 2023, in the Superior Court of New Jersey, Law Division, Essex Court, under Docket ESX-L-002327. (ECF Nos. 1 at ¶ 1, 1-1). On May 10, 2023, the case was removed to the District of New Jersey under the case name *Rhymes, et al. v. Mpower Energy NJ, LLC*, Index 2:23-cv-2556 (BRM) (ESK) (D.N.J.). (ECF 1). On November 13, 2023, the New Jersey District Court stayed discovery, "except for discovery limited to the issue of notice to Rhymes of the mandatory arbitration

---

[2] A ruling on a motion to stay litigation pending arbitration is a non-dispositive motion properly before me under a referral for general pretrial management under 28 U.S.C. § 636(b)(1). *See, e.g.*, *Kumaran v. Vision Fin. Markets, LLC*, 20-CV-3871 (GHW), 2022 WL 17540669, at *2 (S.D.N.Y. 2022) ("District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive[.]") (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021)).

agreement and class action waiver clause and the enforceability of same."[3]  (ECF 60 at 5, 8).  On March 14, 2024, the parties jointly requested to transfer the action from the District of New Jersey to the Southern District of New York, which request was granted.  (ECF Nos. 77, 78, 79).  On March 18, 2024, the case was transferred to the Southern District of New York and given the Index 24-cv-2015.  (ECF 80).

Plaintiffs Magda Silva ("Silva") and Kirk Burke-Hamilton ("Hamilton") filed their complaint in the Southern District of New York against Defendants Mpower Energy NJ LLC and Mpower Energy, LLC (together, "Mpower," or, "Defendants") on November 7, 2023, under the case name *Silva v. Mpower Energy, LLC*, Index 23-cv-9849.  (Silva ECF 1).  Silva resides in New York; Hamilton resides in Washington, D.C.  (Silva ECF 1 at ¶¶ 12, 14).  An initial case management conference in this action only was held on January 31, 2024, at which the Court stayed the case until March 1, 2024.  (Silva ECF 28 at 17:3–5).

Both matters have been referred to me for general pretrial management.  (ECF 86, Silva ECF 11).  On May 2, 2024, the Court held a joint, in-person status conference in both matters.  (ECF 88, Silva ECF Nos. 38, 39).[4]  At the May 2 Conference, the parties proposed omnibus briefing in the two cases regarding the question of whether the parties should be compelled to arbitrate their claims.  (Silva ECF 39 at 13:16–19).  Limited discovery closed on June 28, 2024.  (ECF 88).  (*See also* ECF Nos. 64, 74).

---

[3] The parties also briefed a motion to dismiss the case, which motion was administratively terminated, (ECF 60 at 8), and requested leave to file a motion to stay discovery, which request was denied (ECF 28).

[4] The cases have been designated as related, but have not been consolidated.  (Silva ECF 39 at 27:14–29:14).

Defendants filed their omnibus motion to compel arbitration in both actions on July 31, 2024.  (ECF Nos. 90, 91, 92, 93, 94).  (Silva ECF Nos. 46, 47, 48, 49, 50).  Plaintiffs opposed on August 28, 2024.  (ECF Nos. 97, 98).  (Silva ECF Nos. 53, 54).  Defendants replied on September 13, 2024.  (ECF 99).  (Silva ECF 55).

**B. Factual History**

The Court assumes familiarity with the history of these cases and here summarizes the relevant facts.[5]

**1. The Arbitration Provision**

There are three contracts at issue in these actions: one signed by Silva; one signed by Hamilton; and one signed by Rhymes (individually, "Contract Plaintiff," together, the "Contract Plaintiffs").  (*See* ECF Nos. 92-1, 92-2, 92-3).  Plaintiff Kaur, who is married to Plaintiff Rhymes, did not execute a contract with Defendants, but sues here as a third-party beneficiary of the contract her husband executed.  (*See* ECF 32 at 9).  (*See also* ECF 91 at 28).

The three contracts are substantially similar.  They each include: (1) a one-page form, including the customer's signature and personal identifying information, and key terms regarding pricing, duration, and cancellation (ECF Nos. 92-1 at 2, 92-2 at 4, 92-3 at 2); (2) a one-page list of Terms and Conditions (ECF Nos. 92-1 at 4, 92-2 at 6, 92-3 at 4); and (3) a Spanish-language copy of (1) and (2) (*see generally* ECF Nos. 92-1, 92-2, 92-3).  The contracts also include certain contract summaries in compliance with state law, as well as Spanish-language

---

[5] Separate and apart from the issue of the formation of an arbitration agreement, the Court accepts as true the factual allegations in the complaint that relate to the underlying dispute between the parties for purposes of a motion to compel.  *See, e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012).  *See infra* § III.

versions of the same. (*See generally* ECF Nos. 92-1, 92-2, 92-3). All three contracts include the following provision in their Terms and Conditions (the "Arbitration Provision"):

> DISPUTES. Customer agrees first to contact Mpower [or MPE&G] and attempt to resolve in good faith all billing disputes or service problems. In the event the parties are not able to reach a resolution, **they agree to submit any claim to arbitration**. **Each party waives the right to litigate in court or arbitrate any claim or dispute as a class action, as a member of a class or as a representative, or to act as a private attorney general**. All disputes regarding transmission, distribution, power outages, and LDC charges should be directed to LDC. A dispute or complaint relating to a residential customer may be submitted by either party at any time to [the BPU, DPS, or PSC]. This Agreement shall be construed and governed by the laws of the State of New York without regard to its conflicts of law principles.

(ECF Nos. 92-1 at 4, 92-2 at 6, 92-3 at 4). (**emphasis added**).

### 2. The Enrollment Transaction

Between 2019 and 2021, Defendants' Sales Agents (individually, "Sales Agent," together, the "Sales Agents) approached each of the Contract Plaintiffs individually near their respective residences and invited them to enroll with Mpower as their electricity and gas supplier. (ECF Nos. 92-7 at 21:7–23:23, 92-8 at 25:24–27:3, 92-9 at 14:10–15:10).[6] Each of the Contract Plaintiffs said that they did, and the Sales Agents then began an enrollment process using electronic tablets. (ECF Nos. 92-7 at 22:24–23:15, 92-8 at 30:15–31:3, 92-9 at 14:10–15:7, 92-10 at 22:3–24:8). When enrolling Silva and Rhymes, the Sales Agents used an application called iKnock; with Hamilton, they used SalesRabbit. (ECF 93 at ¶¶ 4–7).

During the enrollment process, the Sales Agents showed the Contract Plaintiffs certain documents on their tablets. The Contract Plaintiffs provided the Sales Agents with personal

---

[6] Steph Watson was the Sales Agent who enrolled Silva (ECF Nos. 91 at 12, 92-10 at 47:23–48:17); Kevin Villamil enrolled Rhymes (ECF Nos. 91 at 14, 93 at ¶ 18); Miguel Galeas enrolled Hamilton (ECF Nos. 91 at 17, 92-3 at 12).

identifying information, including contact information and utility account numbers. (ECF Nos. 92-7 at 23:6–8, 92-8 at 30:15–31:3, 92-9 at 19:17–20:10). The Sales Agents input the information the Contract Plaintiffs provided into the tablets, and then asked the Contract Plaintiffs to confirm its accuracy. (ECF Nos. 92-7 at 23:6–8, 92-8 at 30:15–31:3, 92-9 at 19:17–20:10). The Sales Agents then reviewed the Terms and Conditions with the Contract Plaintiffs while scrolling through the documents on the tablets. (ECF Nos. 92-10 at 53:11–54:7, 92-11 at 46:20–48:19). At their depositions, the Sales Agents testified that the software that they used required them to scroll through all the Terms and Conditions on the tablet before the software would promote the parties to the signature screen. (ECF Nos. 92-10 at 25:11–17, 49:6–54:7, 92-11 at 46:20–48:19). After the Sales Agents finished scrolling through the terms, they handed the tablets to the Contract Plaintiffs for review and signature. (ECF Nos. 92-10 at 50:16–52:8, 92-11 at 52:1–8, 71:12–72:14). The Contract Plaintiffs signed the documents presented to them on the tablets. (ECF Nos. 92-7 at 24:8–10, 35:18–36:16, 92-8 at 35:13–36:16, 92-9 at 23:11–25:15, 92-10 at 49:6–52:8, 92-11 at 52:1–53:9, 71:12–72:14). During the enrollment process, the Sales Agents initiated a separate third-party verification process, whereby a third-party agent, contracted by Defendants, called the Contract Plaintiffs to verify their contact information and confirm their enrollment. (ECF Nos. 92-10 at 23:18–24:6, 92-11 at 29:9–30:5).

   Defendants attest that the Contract Plaintiffs all received copies of the documents that they had signed via an automated text or email sent by the enrollment software (either iKnock or SalesRabbit) which included: the signed one-page form; the one-page list of Terms and Conditions; contract summaries in compliance with state law; and Spanish-language versions of the same. (ECF 94). (*See also* ECF 93 at ¶¶ 11–31).

a. *Silva's Enrollment*

Silva enrolled with Defendants on April 26, 2019. (ECF Nos. 92-2, 92-7 at 20:23–21:6, 94 at ¶¶ 9–13). (*See also* Silva ECF 1 at ¶ 12). Regarding the enrollment process, Silva specifically attests:

- That the Sales Agent showed her documents on a tablet (ECF 92-7 at 25:12–18);

- That she did not read the documents the Sales Agent showed her (ECF 92-7 at 25:12–26:17);

- That she nevertheless signed the documents on the tablet (ECF 92-7 at 24:8–10, 35:18–36:16);

- That she later received an email from Defendants attaching two .pdf files, one containing the one-page form bearing her signature, and one containing the Terms and Conditions that include the Arbitration Provision (ECF 92-7 at 38:22–39:25) (*see also* ECF Nos. 92-2, 94 at ¶¶ 9–13); and

- That, although she received the email attaching these documents, she did not read either attachment (ECF 92-7 at 38:22–39:25).

Silva verified that the signature on the contract at ECF 92-2 is hers. (ECF 92-7 at 36:3–16).

b. *Rhymes's Enrollment*

Rhymes enrolled with Defendants on April 26, 2021. (ECF Nos. 92-8 at 25:24–26:7, 93 at ¶ 18, 94 at ¶¶ 3–8). (*See also* ECF 1-1 at ¶¶ 10, 34). Regarding the enrollment process, Rhymes specifically attests:

- That the Sales Agent showed him documents on a tablet (ECF 92-8 at 30:15–36:3);

7

- That he did not read the documents the Sales Agent showed him (ECF 92-8 at 33:7–12); and

- That he nevertheless signed the documents on the tablet (ECF 92-8 at 35:10–36:3).

Although Rhymes asserts that he never received a copy of the documents he reviewed with the Sales Agent (ECF 92-8 at 43:10–44:3), he produced a photograph of his mobile device depicting a text message, dated April 26, 2021, reading, "Hi Ayan, Welcome to the Mpower family!" and including both a hyperlink to an "agreement document" and a passcode (ECF 92-12). Rhymes testified that he did not recall either receiving this text message or accessing the hyperlink therein (ECF 92-8 at 43:10–44:3), which Defendants dispute, based on forensic evidence that he did so, which Defendants produced in discovery (ECF Nos. 93 at ¶¶ 23–25, 94 at ¶¶ 3–8). This hyperlink is still active and accessible, and the document at that web address contains the Terms and Conditions, including the Arbitration Provision, and is identical to the contract submitted to the Court at ECF 92-2. (*Compare* ECF 92-1 *with* 92-12). Rhymes verified that the signature on the contract at ECF 92-1 is his. (92-8 at 99:8–11)

    c. Hamilton's Enrollment

Hamilton enrolled with Defendants on or around September 29, 2021. (ECF Nos. 92-3, 93 at ¶ 28, 94 at ¶¶ 14–15). (*See also* Silva ECF 1 at ¶¶ 14, 111). At his deposition, he recalled few specifics regarding his enrollment, including whether he provided or verified his personal identifying information. (*See generally* ECF 92-9 at 14:10–18:4). He also testified that, although he did not recall ever seeing or signing the contract at ECF 92-3, (ECF 92-9 at 20:25–21:8, 23:18–24), the customer information and signature on the document are his (ECF 92-9 at 24:25–25:15). Although Hamilton did not produce a copy of the contract in discovery, (ECF 92-

8

15 at Response No. 9), Defendants did, along with an internal audit trail prepared by Defendants' IT personnel, reflecting that the document was viewed and signed by both Hamilton and the Sales Agent on September 29, 2021 (ECF Nos. 92-3, 93 at ¶¶ 28–29, 94 at ¶¶ 14–15). Hamilton did not recall whether he received copies of any documents from Defendants. (ECF 92-8 at 21:5–17). Defendants were unable to obtain a record of any email correspondence with Hamilton because the software used to enroll him does not retain records of emails sent to customers for more than three months, and this litigation did not begin until 2023. (ECF 93 at ¶¶ 30–31).

### III.     DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[7] 9 U.S.C. § 2. Section 3 of the FAA further provides that if any suit is brought in federal court "upon any issue referable to arbitration," the court, "upon being satisfied" that an issue involved in the suit is referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The FAA's policy "is to make arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (internal citations omitted). Accordingly, courts will hold parties to their arbitration contract, "just as [they] would to any other kind." *Id.*

---

[7] The FAA governs the contracts between the parties here because the products delivered under the contracts involve the transmission of energy across state lines, which the Supreme Court has recognized as a form of interstate commerce. *See, e.g.*, *New York v. FERC*, 535 U.S. 1, 16 (2002) (agreeing that "transmissions on the interconnected national grids constitute transmissions in interstate commerce.").

To determine whether claims are arbitrable, courts apply a two-part test, considering: (1) whether the parties have entered a valid agreement to arbitrate; and, if so, (2) whether the dispute is within the scope of the arbitration agreement. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 87 (2d Cir. 2024) (citing *In re Am. Express Fin. Advisors Sec. Litig*, 672 F.3d 113, 128 (2d Cir. 2011)). Plaintiffs here contest only whether they entered an agreement to arbitrate, not whether the Arbitration Provision itself covers the scope of the disputes in these actions.[8] (*See generally* ECF 97).

When deciding a motion to compel arbitration and stay all or part of a litigation pursuant to the FAA, the court applies a "standard similar to that applicable for a motion for summary judgment," and considers all relevant, admissible evidence contained in the pleadings, admissions on file, and affidavits. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citing cases). If the dispute falls within the scope of the arbitration agreement, then, absent a genuine issue of material fact regarding the formation of the agreement, the court must grant the motion to compel and stay the litigation. *Id.* If "the making of the arbitration agreement" is in dispute, then the court should deny the motion. *Barrows v. Brinker*, 36 F.4th 45, 49 (2d Cir. 2022) (quoting 9 U.S.C. § 4).

---

[8] Nevertheless, there can be no doubt that the disputes at issue in this action are within the scope of the Arbitration Provision. Where a party contests the scope of an agreement to arbitrate, courts will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24–25 (1983) (citation cleaned up)). Here, the parties' claims, which relate to Defendants' billing practices, plainly fall within the Arbitration Provision's requirement that the parties arbitrate "all billing disputes or service problems" if they "are not able to reach a resolution." (*See* ECF Nos. 92-1, 92-2, 92-3).

The party moving to compel arbitration bears the initial burden of demonstrating, by a preponderance of the credible evidence, that an agreement to arbitrate was made. *Id.* at 50; *Manukian v. Pritchard Indus.*, 22-CV-10724 (JLR) (OTW), 2023 WL 6311287, at *3 (S.D.N.Y. 2023) (citing cases). A "preponderance of the evidence" means "evidence which, when considered and compared with that opposed to it, produces a belief that what is sought to be proved is more likely true than not." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 17-CV-4570 (LAK) (KHP), 2017 WL 7309893, at *2 (S.D.N.Y. 2017) (citing *In re Omeprazole Patent Litig.*, 490 F.Supp 2d 381, 414 (S.D.N.Y. 2007)), *rep. & rec. adopted at*, 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. 2018), *aff'd*, 763 F. App'x 101 (2d Cir. 2019). If the movant makes this showing, the burden shifts to the nonmovant to show that either: (1) they did not consent to arbitration; (2) the arbitration agreement is invalid or unenforceable; or (3) the arbitration agreement does not encompass the claims the movant wishes to arbitrate. *Manukian*, 2023 WL 6311287, at *3 (citing cases). If the movant satisfies their burden, the opposing party must "counter with at least *some evidence* to substantiate [their] denial that an agreement had been made." *Barrows*, 36 F.4th at 50. (*emphasis* in original) (internal citation omitted).

In support of their motion, Defendants argue that the Contract Plaintiffs agreed to the Arbitration Provision after being afforded an opportunity to review the Terms and Conditions during the enrollment process. (ECF Nos. 91 at 5, 99 at 7–8). Plaintiffs argue that they never saw, and were never afforded an opportunity to review, the Terms and Conditions at all, including the Arbitration Provision. (ECF 97 at 6). They insist that they were, at most, only shown the one-page form during the enrollment process, and thus lacked notice of the Terms and Conditions, which were "not in fact part of the parties' contract." (ECF 97 at 7–8).

For the following reasons, I find that Defendants have made a *prima facie* showing that all the Contract Plaintiffs agreed to the Arbitration Provision. I further find that Plaintiffs have not met their burden to show otherwise.

### A. The Contract Plaintiffs Agreed to the Arbitration Provision

Defendants have satisfied their burden of showing that the Contract Plaintiffs executed contracts containing the Arbitration Provision. A plaintiff's admission that they signed a contract "creates a presumption that the signatory consented to the contract's terms." *Wilson v. Mercury Cas. Co.*, 18-CV-11014 (AT) (OTW), 2019 WL 13020790, at *3 (S.D.N.Y. 2019) (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)). Defendants here have provided signed copies of their contract with each applicable plaintiff, including the one-page form and the one-page Terms and Conditions. (ECF Nos. 92-1, 92-2, 92-3). Each Contract Plaintiff has verified that the signature on each of their respective contracts is, indeed, theirs.[9] (ECF Nos. 92-7 at 36:3–16, 92-8 at 99:8–11, 92-9 at 24:25–25:15). Defendants have also provided ample testimony from both Plaintiffs and Defendants' Sales Agents reflecting that the Contract Plaintiffs reasonably should have known that they were entering into agreements with Terms and Conditions and that their signatures would be a "physical manifestation of assent" to those Terms and Conditions. *See Applebaum v. Lyft*, 263 F.Supp.3d 454, 465 (S.D.N.Y. 2017). Defendants have thus made a *prima facie* showing by a preponderance of the credible evidence that the parties executed an agreement to arbitrate.

---

[9] Plaintiffs have not met their burden to show that these signatures are invalid. *See Lojewski v. Group Solar USA, LLC*, 22-CV-10816 (PAE), 2023 WL 5301423, at *10 (S.D.N.Y. 2013).

B. **The Contract Plaintiffs Had Inquiry Notice of the Arbitration Provision**

I find that the Contract Plaintiffs had inquiry notice of the Terms and Conditions, and that there is, therefore, no genuine dispute regarding whether the parties agreed to the Arbitration Provision.

To bind the parties, a contract "requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks and citation omitted). "Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id.* at 289 (emphasis in original). To determine whether an offeree has had inquiry notice of contract terms, New York courts look to "whether the term was obvious and whether it was called to the offeree's attention," which "often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.* The same contract law principles apply to online transactions, as well as to the instant "hybrid analog-digital" setting. *Id.*; *Lojewski v. Group Solar USA, LLC*, 22-CV-10816 (PAE), 2023 WL 5301423, at *8 (S.D.N.Y. 2013).

Although the evidence does not establish that the Contract Plaintiffs had actual notice of the Terms and Conditions, it does establish that they had inquiry notice, and, therefore, that they assented to the Arbitration Provision. Given the "transactional context of the parties' dealings," a reasonable person in the Contract Plaintiffs' position would presume that signing documents—be they analog or digital—in connection with enrollment for residential energy services would "clearly contemplate[] some sort of continuing relationship" between themselves and Defendants that "would require some terms and conditions." *Meyer*, 868 F.3d

13

at 80.  *See Lojewski*, 2023 WL 5301423, at *9.  Silva and Rhymes, who both *admit* that documents were presented to them on the tablets (*see supra* §§ II.B.2(a)–(b)), should have understood that their signatures constituted assent to the Terms and Conditions therein, even if, as they attest, they did not read them.  *Starke*, 913 F.3d at 289.  Hamilton's inability to recall whether he received electronic copies of the instant Terms and Conditions at all (*see supra* § II.B.2(c)) still does not absolve him of the duty to inquire about them in this context.  *See Lojewski*, 2023 WL 5301423 at *9 (collecting cases).  Moreover, even if—as Plaintiffs incredibly insist—the Terms and Conditions had only been circulated by email or text message after the enrollment process was complete, such facts would not preclude a finding that the Contract Plaintiffs had "reasonable notice of the existence of those terms and conditions [] and, therefore, the duty to inquire about those terms if [they] wished."  *Id.*

### C. All Plaintiffs Must Arbitrate Their Claims Individually

All Plaintiffs—including Kaur[10]—must arbitrate their claims individually.  Under the FAA, courts are expected to "rigorously enforce" arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their dispute and the rules under which that arbitration will be conducted.  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citing cases).  A class action waiver in a valid agreement to arbitrate is

---

[10] It is not disputed that Plaintiff Kaur is also bound by the Arbitration Provision.  A non-signatory is bound to an arbitration agreement "if so dictated by the ordinary principles of contract and agency."  *Thomson-CSF, S.A. v. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (internal quotation marks omitted).  Here, Kaur used and benefited from Defendants' services in precisely the same way as her husband, Rhymes, and so she is bound by Individual Arbitration Provision.  *See, e.g.*, *Lojewski*, 2023 WL 5301423, at *13 (finding that an arbitration provision in a contract signed by one spouse bound the other because he "received direct benefits from the Agreement, permitting [the defendant] to estop him from avoiding arbitration of his claims").

enforceable (*see generally id.*) and parties cannot be compelled to arbitrate disputes in a class action arbitration where the parties do not agree to do so (*see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011)).  Here, the Arbitration Provision is clear that the contract's signatories waive their right to arbitrate their claims as a class.  (*See* ECF Nos. 92-1 at 4, 92-2 at 6, 92-3 at 4).  Plaintiffs raise no arguments to the contrary.  (*See generally* ECF 97).  Accordingly, the parties must arbitrate their claims individually.

### D. These Cases Are Stayed Pending Mediation and Arbitration

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), *cert. denied*, 577 U.S. 1031 (2015).  Defendants have requested such a stay here.  Accordingly, the Court hereby **STAYS** this case pending arbitration.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel individual arbitrations is **GRANTED** and both actions (23-CV-9849 and 24-CV-2015) are **STAYED** in their entirety pending completion of arbitration.  The parties are directed to file a joint status letter on both dockets **within 60 days** of completing arbitration.

The Clerk of Court is respectfully directed to close **ECF 46** in case 23-CV-9849, and **ECF 90** in case 24-CV-2015.

**SO ORDERED.**

Dated: March 27, 2025  
New York, New York

*/s/ Ona T. Wang*  
**Ona T. Wang**  
United States Magistrate Judge